IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL COTTRILL** and **LAWRENCE E. WNUKOWSKI**, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No.: 02-CV-3646 |
| | : : | |
| **BRITNEY SPEARS,** *et al.*, | : : | |
| Defendants. | : : : | **JURY TRIAL DEMANDED** |

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN FURTHER SUPPORT OF THEIR OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Michael Cottrill and Lawrence E. Wnukowski ("Plaintiffs"), by and through undersigned counsel, Bochetto & Lentz, P.C., hereby submit the following Supplemental Memorandum in Support of Their Opposition to Defendants' Motion for Summary Judgement

    **1.**     **Access is established no matter when and where Ms. Spears' sang the vocal tracks.**

Defendants continue to cling to their "impossibility of access" argument by stating that access cannot be established because Ms. Spears sang the vocal track in November of 1999.[1]

---

[1]     Defendants incorrectly rely on cases that do not even concern musical copyright infringement and are clearly distinguishable on their facts. For example, in *Rogisnki v. Time Warner Interactive*, 967 F.Supp. 821 (M.D. Pa. 1997) the court concluded:

> There is no evidence of direct access in this case. In this regard, it is undisputed that Roginski never sent a copy of the manuscript to the defendants. Further, there is no evidence of third party access. In this regard, there is no evidence that the book publishers to whom Roginski sent his manuscript shared it with any of the defendants. Moreover, those book publishers do not have any relationship with any of the defendants such that access could be assumed. Under these circumstances, no rational trier-of-fact could conclude that defendants had access to Roginski's manuscript simply because he made it available to others.

Defendants' argument remains flawed, especially in light of the fact that Mr. Cottrill submitted a similar version of the musical track of the song "*What You See Is What you Get*," before Ms. Andrea Barone sang her vocals, which is prior to November of 1999.[2] This song had the same melody as the final version.

Even if Defendants did not receive an instrumental version of Plaintiffs' song, -- a fact which is contested--the record still shows that Defendants' infringing song was ***not completed*** until May 4, 2000. In addition, the facts show that the Written Notification of Completion, which would generally be signed at the completion of a song, was not signed until March 31, 2000. (See Written Notice of Completion, a true and correct copy is attached hereto as Exhibit "A.") Also, Defendants admittedly mixed and changed the song after Ms. Spears' vocals were recorded. (Dep. Magnusson, pp 15, 16, 26-7); (Dep. Yacoub, p. 30, 36).  In fact, the Cheiron studio was founded by remixing the latest chart breaking hits. (See Copy of Cheiron website, a true and correct copy is attached hereto as Exhibit "D.")  Moreover,  Defendants failed to provide any tapes or compact discs (instrumental or vocal) of the initial November 1999 recording which was previously titled "*The Latin Song*."  Thus, numerous facts remain in dispute as to when the instrumental version of the infringing song was completed.  Regardless of whether the vocals were recorded in November of 1999, Defendants have not demonstrated the "impossibility of

---

Unlike *Rogisnki*, Plaintiffs have established access through an intermediary agent (Mr. Kahn) and a third party (Mr. Pearlman).

[2]     In that regard, Mr. Martin Sandberg, one of the Swedish producers and writers of the *Oops . . . .I Did It Again* album, stated at his deposition that Zomba, as well as other people sent him music to determine its commercial viability.  (Dep. Sandberg, pp. 20-21.) Defendants could have been provided a copy of the instrumental version through these channels.

access."  In fact, the record evidence demonstrate the opposite is true.  Access was not only possible but probable.

Plaintiffs have also introduced evidence that between December of 1999, up to the release of Ms. Spears' album on May 16, 2000, Defendants had access to Plaintiffs' song through Defendants' ***own employee*** and intermediary Mr. Kahn and through third party Mr. Pearlman.  *See Meta-Film Assoc. v. MCA Inc.*, 586 F.Supp. 1346, 1355 (C.D.Cal.1984) (noting that an intermediary is either "the person who had viewed plaintiff's work and was therefore in a position to transmit it to the copier, … a supervisor with responsibility for the defendant's project, was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work").  Mr. Kahn, who is credited with discovering Ms. Spears, was looking for materials for Ms. Spears and had direct access to Steven Lunt, who was the individual responsible for picking out songs for Ms. Spears.[3]

This is more than sufficient evidence of "reasonable possibility" of access.  *See Selle v. Gibb*, 741 F.2d896 (7th Cir. 1984) (stating that "[t]he plaintiff may be able to introduce direct evidence of access when, for example, the work was sent directly to the defendant (whether a musician or a publishing company) or a close associate of the defendant.")  Defendants, however, want this Court to believe that access can only be established by an outright admission. This is incorrect.  Not surprisingly, all parties involved in the alleged "creation" of

---

[3] Defendants' argument that Plaintiffs have not established evidence that the tapes were sent to Sweden is unconvincing.  Recordings can be easily mailed or sent over the internet.  In any event, Plaintiffs have clearly met their burden of "reasonable possibility" of access because Plaintiffs' song was submitted to a direct employee of the Defendants, who had direct access to Ms. Spears' production team.

the infringing song deny access.  These self-serving denials merely create disputed issues of fact as to access and independent creation. On this record alone, Defendants "impossibility of access" argument lacks merit, legally and factually, and summary judgment should therefore be denied.

    **2.    Defendants new and unsupported theory of Ms. Spears' vocals as the <u>melody</u> lacks merit.**

Recognizing that the <u>music</u> version of the infringing song was changed, altered and mixed <u>after</u> Ms. Spears' vocals were recorded, during oral argument for the first time, Defendants asserted that Ms. Spears' <u>vocals</u> provide for the infringing song the melody and that the vocals cannot be changed.  Defendants' new and unfounded argument is equally meritless. First, the vocals of an artist can be changed <u>after</u> it is recorded.  (See Decl. George Hajioannou, a true and correct copy is attached hereto as Exhibit "B.")  Defendants could have changed Ms. Spears' vocals even after the vocal recordings in November of 1999.  Moreover, Defendants' argument completely ignores that Plaintiffs' infringement claim is based on the <u>music</u> of the infringing song and not Ms. Spears' vocals.[4]  Defendants offered no evidence from Ms. Spears as to what changes were made after she sung the vocals.  Defendants' counsel has represented she has no idea what changes were made after November 1999. This record is clear, however that subsequent changes were made.

    **3.    Plaintiffs do not have to show infringement of their melody *plus* to establish copying.**

Defendants also mistakenly argue for the first time that Plaintiffs have to establish

---

[4]    Plaintiffs' own expert and Defendants' expert Mr. Ricigliano analyzed the melody based on the music not the vocal tracks.

infringement of melody *plus* something else to establish copying. In support thereof, Defendants erroneously cite to *ZZ Top v. Chrysler Corp.*, 54 F.Supp. 2d 983 (W.D. Wash. 1999) and *Swirsky v. Carey*, 226 F.Supp. 2d 1224 (C.D. Ca. 2002). Defendants' reliance on these cases is legally and factually misplaced. It is abundantly clear that:

> Melody is the most memorable part of a composition, the tune that the listener later hums or whistles to himself. Because melody is so salient, it is the most common focus of musical copyright infringement cases.

2 Paul Goldstein, Copyright ¶8.39 (2d ed. Supp. 2002). Clearly, Plaintiffs have submitted competent evidence that ***the melody*** of the infringing song is substantially similar, if not strikingly similar, to Plaintiffs' song. A simple auditory comparison of both songs played together, or a comparison of Ms. Spears' karaoke version with Ms. Barone's vocals imposed on it, shows substantial similarity. As the Court witnessed during oral argument, when you play Defendants' and Plaintiffs' songs at the same time the similarities are striking.

In addition to the substantially similar melody of both songs, Plaintiffs have shown that numerous other similar elements of Plaintiffs' song can be found in Defendants' song. These elements include opening notes, the outro as well as the title of Defendants' song. These similarities are laid out in Mr. Cottrill's declaration and can be heard on the compact disc submitted by Plaintiffs. All these elements combined, separate and apart from the melody, also constitutes copying. Therefore, although not required, Plaintiffs have shown melody *plus*.

**4.     Material Issues Of Fact Remain In Dispute As To Substantial Similarity**

Throughout their Brief, Defendants attack Plaintiffs' musicological expert, Dr. Bevil and his reduction analysis. However, when Defendants' expert Mr. Ricigliano provided an expert report on behalf of a Plaintiff, in another music infringement case in which Defense

5

counsel is the opposing party, Defendants' counsel is quick to disagree with Mr. Ricigliano's reduction analysis. This same analysis that also formed the basis for Mr. Ricigliano's expert opinion in the instant litigation. (See Mr. Ricigliano's expert report on behalf of another plaintiff, a true and correct copy is attached hereto as Exhibit "C.") Defendants own disagreement with their own expert speaks for itself.

Clearly, there are material issues of fact in dispute based on the expert reports and anticipated trial testimony in this matter. Therefore, summary judgment is improper.

Based on the foregoing, Plaintiffs respectfully request the Court to deny Defendants' Motion for Summary Judgment.

                                          Respectfully submitted,

                                          **BOCHETTO & LENTZ, P.C.**

                                          BY: _____
                                                     Gavin P. Lentz, Esquire
                                                       David Heim, Esquire
                                                       Vincent van Laar, Esquire
                                                       Attorneys for plaintiffs

## **CERTIFICATE OF SERVICE**

I, Vincent van Laar, Esquire, hereby certify that on May 13, 2003, I served a true and correct copy of the foregoing Plaintiffs' Supplemental Memorandum In Further Support Of Their Opposition to Defendants' Motion for Summary Judgment and accompanying Declarations, Exhibits, via First Class Mail, addressed to the following:

> Vincent V. Carissimi, Esquire
> Pepper Hamilton, LLP
> 3000 Two Logan square
> 18th & Arch Streets
> Philadelphia, PA 19103

> Michael T. Mervis, Esquire
> Proskauer Rose, LLP
> 1585 Broadway
> New York, NY 10036-8299

**BOCHETTO & LENTZ, P.C.**

By: _____
   Vincent van Laar, Esquire