**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL COTTRILL and** | : | |
| **LAWRENCE E. WNUKOWSKI,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BRITNEY SPEARS, et. al,** | : | **No. 02-3646** |
| **Defendants.** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Schiller, J.**                                                                              **May     , 2003**

## I.    INTRODUCTION

Plaintiffs Michael Cottrill and Lawrence E. Wnukowski bring this action against Defendants Zomba Recording Corp., Zomba Enterprises, Inc., Zomba Songs, Inc. (collectively "Zomba"),  Jive Records ("Jive"), Britney Spears, Wright Entertainment Group, and BMG Music Publishing, Inc ("BMG").  Specifically, Plaintiffs allege that the melody of Defendants' song "*What U See Is What U Get*" on Britney Spears's "*Oops I Did It Again*" album infringed Plaintiffs' copyright on the melody of their song entitled "*What You See Is What You Get.*"[1]  Defendants now move for summary judgment.  For the reasons set forth below, I grant Defendants' motion for summary judgment.

## II.    BACKGROUND

### A.    Creation and Distribution of Plaintiffs' *"What You See Is What You Get"*

Plaintiffs Michael Cottrill and Lawrence Wnukowski are songwriters who have obtained

---

[1] As clarified at oral argument, Plaintiffs no longer allege that Defendants' song "*Can't Make You Love Me*" infringes upon the copyright of their work.  Additionally, Plaintiffs' claim of copyright infringement does not involve allegations of similarity regarding the lyrics of Plaintiffs' song and Defendants' song.

copyrights for over thirty songs that they have written together.  (Cottrill Decl. ¶ 4.)  This action involves the copyright for one such song entitled "*What You See Is What You Get*," which Plaintiffs contend was impermissibly infringed in the creation of Defendants' "*What U See Is What U Get*." Specifically, Plaintiffs assert that the music of Defendants' "*What U See Is What You Get*" was copied from Plaintiffs' copyrighted work.

The background of this case begins in 1995, when William Kahn, the talent scout and representative of Britney Spears, invited Plaintiffs to submit song materials for Ms. Spears.  (Cottrill Dep. at 60.)  Plaintiffs started writing material for Ms. Spears and eventually submitted some material to Mr. Kahn for consideration.  (*Id*.)  Subsequently, a lawsuit by Mr. Kahn against Ms. Spears, Jive, and  Zomba put these submissions on hold.  (*Id.* at 60-61; Kahn Dep. at 54-55.)

In April 1999, after Mr. Kahn settled the lawsuit against Ms. Spears, he was hired by Jive/Zomba as an Artist and Repertoire ("A & R") Consultant and again became involved in Ms. Spears's career.  (Kahn Dep. at 11, 39, 54.)  As part of his contract, Mr. Kahn was required to find and submit three artists per year to Zomba, and also had access to Steve Lunt, Ms. Spears's A & R Consultant.  (*Id*. at 19, 39; Kahn-Jive Contract, attached to App. to Pls. Mem. of Law Opposing Defs. Mot. for Summ. J. ("Pls. App."), Ex. 4.)  As a result of having this contractual relationship, Mr. Kahn was also "encouraged to forward any song material for artists that [Jive/Zomba] already had." (Kahn Dep. at 11-12.)  In his deposition, Plaintiff Cottrill testified that at this time, Mr. Kahn again approached him about writing songs for submission to Jive Records.  (Cottrill Dep. at 61.)

In or about 1998, Plaintiffs began creating "*What You See Is What You Get.*"  (Cottrill Dep. at 15-16, 38.)  In or around October 1999, the vocals for Plaintiffs' "*What You See Is What You Get*" were recorded by Andrea Barone.  (Pls. Mem. of Law Opposing Defs. Mot. for Summ. J. ("Pls.

2

Mem.") at 7; Cottrill Dep. at 35-36.)  Before the final recordings by Ms. Barone, Plaintiff Cottrill played a version of the instrumental recording of Plaintiffs' "*What You See Is What You Get*" for Mr. Kahn.  (*Id.* at 35.)  Plaintiff Cottrill and Mr. Kahn discussed the possibility of submitting the song for Ms. Spears.  (*Id.* at 36.)  Plaintiff Cottrill also gave Mr. Kahn copies of the instrumental version of Plaintiffs' song prior to recording the vocals in October 1999.  (*Id.* at 48-49.)  In his deposition testimony, however, Plaintiff Cottrill testified that the version of the song that he may have submitted to Mr. Kahn at this time "has nothing to technically do with" the copyrighted version of the song at issue.[2]

---

[2] In his deposition, Plaintiff Cottrill testified as follows:

> Q:     Was there any other time or any other occasion on which you gave either Mr. Kahn. . .a copy of a recording of "What You See Is What You Get". . . ?

> A:     Yes, I gave Billy, I think, copies of the music on tape prior to Andrea singing it, I think, that I can - - I can't recall exactly what they were.  The actual just the music, the groove, you know what I'm saying, to get him interested in it for Britney. That's before we ever had Andrea singing. . . .

> Q:     So when you say you gave him a tape of the music of "What You See Is What You Get," those were instrumental tracks with no vocals on them?

> A:     Right. That's prior to - - that's prior to having Andrea sing them.  So it has nothing to technically do with this actual tape that's here.  It could have been, you know, tracks that I was doing leading up to - - in the whole design of the song.

> Q:     When you say it had nothing to do with this actual tape that's here, what tape are you referring to?  The song involved in this lawsuit?

> A:     The one - - right.  Won't be the original tracks on - - that are - - not the lawsuit, the original  - - it won't be the original

Plaintiffs submitted the final version of "*What You See Is What You Get*" to the Copyright Office on November 27, 1999, shortly after completing it, and on December 1, 1999, the Copyright Office issued a copyright for "*What You See Is What You Get.*" (*Id.* at 16-17, 39.) Shortly thereafter, Plaintiffs gave the completed, copyrighted version of their song to Mr. Kahn. (*Id.* at 23-24.) In his deposition, Mr. Kahn testified that he did not send a copy of Plaintiffs' song to Jive Records or anyone else.[3] (Kahn Dep. at 91-93, 97, 109.)

Plaintiffs were concurrently promoting their song and the vocalist, Andrea Barone, during this time. (Cottrill Dep. at 36.) As a result, in January 2000, Plaintiffs submitted a package containing Ms. Barone's biography and a compact disc ("CD") with their song to Lance Lowenstein. (*Id.* at 81-84) Mr. Lowenstein allegedly forwarded this information to Louis Pearlman. Mr. Pearlman allegedly has contact with Jive Records through his musical group, Backstreet Boys. (Pls. Mem. at 3.) On February 15, 2000, Mr. Pearlman sent a letter to Mr. Lowenstein stating, "I am forwarding Ms. Barone's Bio and CD to the record distributors." (Pls. App., Ex. 8.)

**B.    Creation of Defendants' "*What U See Is What U Get*"**

Jörgen Elofsson, David Kreuger, Per Magnusson, and Rami Yacoub, the creators of Defendants' "*What U See Is What U Get,*" are professionals in the music industry who have written

---

tracks that are sent to the copyright office. . . . It would have been tracks that I was laying down, starting out.
Cottrill Dep. at 48-50.

[3] Mr. Lunt stated in his declaration that he has only ever listened to one recording that was sent by Mr. Kahn, and it was not Plaintiffs' "*What You See Is What You Get.*" (Lunt Decl. ¶ 7.) Additionally, Mr. Lunt stated that he had never heard Plaintiffs' song and never received a copy of it before March 2003. (*Id* ¶ 8.) Mr. Lunt also stated that he did not provide a copy of Plaintiffs' song to the creators of Defendants' song "*What U See Is What U Get.*" (*Id.*)

and produced widely-released songs for several popular recording artists, such as Celine Dion, Backstreet Boys, and N'Sync. (Elofsson Decl. ¶ 2; Yacoub Decl. ¶ 2; Kreuger Decl. ¶ 2; Magnusson Decl. ¶ 2.)  They have also worked on writing and producing several other songs for Ms. Spears. (Yacoub Decl.  ¶ 2; Elofsson Decl. ¶ 2; Magnusson Decl. ¶ 2; Kreuger Decl. ¶ 2.)

In August 1999, Messrs. Elofsson, Kreuger, and Magnusson began writing Defendants' "*What U See Is What U Get*" in Stockholm, Sweden.  (Elofsson Decl. ¶ 4; Yacoub Decl. ¶ 3; Kreuger Decl. ¶ 4; Magnusson Decl. ¶ 4.)  In declarations submitted by Defendants in support of their motion for summary judgment, creators Messrs. Elofsson, Yacoub, Kreuger, and Magnusson stated that "*What U See Is What U Get*" was completed by October of 1999 after Mr. Yacoub added some melody changes.  (Elofsson Decl. ¶ 4; Yacoub Decl. ¶ 3; Kreuger Decl. ¶ 4; Magnusson Decl. ¶ 4.) In their depositions, Messrs. Yacoub and Magnusson could not specifically articulate their respective contributions to the song or the contributions of the other songwriters, but Mr. Yacoub described his role as involving "cosmetic changes in the end," (Yacoub Dep. at 34), and Mr. Magnusson stated that "he and Jörgen and David worked together and are playing back and forth ideas, so he cannot point out exactly what he . . . put into it," but that "[a]ll of [them] participated in the creation of the melody" (Magnusson Dep. at 22-23).   Messrs. Yacoub and Magnusson both testified that neither Zomba, BMG, nor Steven Lunt sent them recorded music for their consultation.  (Magnusson Dep. at 31; Yacoub Dep. at 38.)  All four creators also stated in their declarations that they had not heard Plaintiffs' song before March 2003 and did not copy it to create Defendants' song.  (Elofsson Decl. ¶ 8; Yacoub Decl. ¶ 6; Kreuger Decl. ¶ 7; Magnusson Decl. ¶ 7.)  Mr. Lunt similarly stated in his declaration that he did not hear Plaintiffs' song before March 2003 and did not provide the creators of "*What U See Is What U Get*" with a copy of Plaintiffs' song.  (Lunt Decl. ¶ 8.)

In November 1999, Ms. Spears recorded vocals for "*What U See Is What U Get*" in Stockholm, Sweden. (Spears Decl. ¶ 2; Elofsson Decl. ¶ 5; Yacoub Decl. ¶ 4; Kreuger Decl. ¶ 5; Magnusson Decl. ¶ 5.)  In his deposition, Mr. Yacoub testified that at this time, Ms. Spears did not sing "to live music, but to a recording which might not have been the final version because it's still a step in the process." (Yacoub Dep. at 30.)  Ms. Spears did not re-record the vocals of this song. (*Id.* at 44.)

After Ms. Spears recorded the vocals for the song, there was "mixing" done to the song in the production process. (Yacoub Dep. at 36; Magnusson Dep. at 26.)  The mixing process was described by Mr. Yacoub as "actually taking bits and pieces that you already have and just mak[ing] all these things sound as good as possible together." (Yacoub Dep. at 37.)  Mr. Magnusson also testified that "[i]n the production process, . . . there might have been changes, might have been new grounds or things might have been added," but he could not specifically remember what was added to the song. (Magnusson Dep. at 26-27.)  A log of changes made to Defendants' song in the mixing process reflects that changes were made to the song up until May of 2000. (Pls. App., Ex. 11.)  Mr. Magnusson, however, stated that the melody was not rewritten or recreated during this production and mixing process. (Magnusson Dep. at 35.)  Similarly, Mr. Yacoub stated that after Ms. Spears left Sweden in November 1999, the melody of the song was not rewritten or recreated. (Yacoub Dep. at 45, 47.)

On March 31, 2000, the songwriters signed a contract determining the split percentages of authorship for their song. (Yacoub Dep. at 16; Pls. App, Ex. 13.)  Mr. Magnusson testified that this contract "has nothing to do with the creation of the song," and that "[t]hey can be sent at any time, this contact could be signed at anytime." (Magnusson Dep. at 20-21.) Mr. Yacoub also testified that

6

while these percentage split contracts could be completed at "different times," they normally are produced when the song is finished.  (Yacoub Dep. at 16.)  In May 2000, Britney Spears's "*Oops I Did It Again*"album was released with the song "*What U See Is What U Get.*"  (Spears Decl. ¶1.)


### III.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of identifying those portions of the record that it believes illustrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where the non-moving party has the burden of proof on a particular issue at trial, the moving party meets its burden by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  Once the moving party meets this burden, the non-moving party must offer admissible evidence that establishes a genuine issue of material fact that should proceed to trial.  *See id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  In order to meet this burden, the opposing party must point to specific, affirmative evidence in the record and not simply rely on mere allegations, conclusory or vague statements, or general denials in the pleadings.  *See Celotex*, 477 U.S. at 324. "Such affirmative evidence -- regardless of whether it is direct or circumstantial -- must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."

*Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).  The non-moving party does not, however, need to produce evidence in a form that would be admissible in order to avoid summary judgment, *id.*, "as long as the evidence could be later presented in a form that 'would be admissible at trial' -- i.e. reducible to admissible form -- it can be used to defeat summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (*citing Williams*, 891 F.2d at 466 n.12).

A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  In making this determination, the non-moving party is entitled to all reasonable inferences.  *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  A court may not, however, make credibility determinations or weigh the evidence in making its determination.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002) (*citing* same).

## IV.    DISCUSSION

Plaintiffs brought this action on June 7, 2002, alleging that Defendants' "*What U See Is What U Get*" infringes the copyright to Plaintiffs' song.  Defendants now move for summary judgment, arguing that Plaintiffs have failed to raise a triable issue meeting the elements of copyright infringement.  Specifically, Defendants assert that access is a chronological impossibility and that the two songs are not substantially or strikingly similar.

### A.    Legal Standard for Copyright Infringement

In order to establish copyright infringement, a plaintiff must prove two elements: "(1)

ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (*citing Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 548 (1985)); *see also Dam Things From Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 560 (3d Cir. 2002) (*citing Whelan Assoc. v. Jaslow Dental Labs., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986)).   A copyright registration certificate is prima facie evidence sufficient to meet the first prong of the analysis.   *See* 17 U.S.C. § 410(c) (2003); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991); *see also* 3 MELVILLE NIMMER & DAVID NIMMER, *Nimmer on Copyright* § 13.01[A] (2001) (hereinafter "*Nimmer*").   As such, the analysis is usually focused on the second "copying" prong.   *See e.g. Whelan*, 797 F.2d at 1231.   "As it is rarely possible to prove copying through direct evidence, copying may be proved inferentially by showing that defendant had access to the allegedly infringing copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Id.* at 1231-1232 (*citing Roth Greeting v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970)).   Here, Plaintiffs seek to prove infringement without direct evidence and must therefore make the requisite showing as to access and similarity.

### 1.   Access

There are three legal theories for proving access in copyright cases: (1) direct access; (2) access through third parties; or (3) striking similarity.   *See Hoffman v. Pressman Toy Corp.*, 790 F. Supp. 498, 505 (D.N.J. 1990), *aff'd*, 947 F2d 935 (3d Cir. 1991); *see also Nimmer*, § 13.02[A] &[B] (discussing legal theories of proof of access).   Access has been described as a reasonable opportunity to hear plaintiff's work or a reasonable possibility to copy plaintiff's work.   *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *see also*

*Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1490 (10th Cir. 1993); *Sylvestre v. Oswald,* Civ. A. No. 91-5060, 1993 WL 179101, at *3, 1993 U.S. Dist. LEXIS 7002, at *9 (S.D.N.Y.  May 21, 1993); *Nimmer*, § 13.02 [A].  A bare possibility based on mere conjecture, however, will not suffice as evidence of access.  *See Hoffman*, 790 F. Supp. at 506-7; *see also Roginiski v. Time Warner Interactive*, 967 F. Supp. 821, 826 (M.D. Pa. 1997) ("A finding of access, however, cannot be the product of speculation or conjecture."); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 281 (S.D.N.Y. 1991) ("Conjecture or speculation of access will not suffice."); *Nimmer*, § 13.02[A].

Access can be proved by "showing a particular chain of events or 'link' by which the alleged infringer might have gained access to the work."  *See Sylvestre*, 1993 U.S. Dist. LEXIS 7002, at *8 (*citing Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992); *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988)).  For example, one such link may be established by showing the existence of a channel of communication between the person that the plaintiff submitted his work to and the person or persons whom ultimately created Defendants' work.  *See Nimmer*, § 13.02[A].  Additionally, access through a third party may be established by showing that the third party had possession of plaintiff's work and had concurrent dealings with both plaintiff and defendant.  *See Gaste*, 863 F.2d at 1067; *see also Nimmer*, § 13.02[A].  When the existence of such channels of communication are denied by the people allegedly involved, but supported by some evidence submitted by the plaintiff, summary judgment is inappropriate on the access issue.  *See Tomasini v. Walt Disney Co.*, 84 F. Supp 2d 516, 522 (S.D.N.Y. 2000); *Cox v. Abrams*, Civ. A. No. 93-6899, 1997 WL 251532, at *3, 1997 U.S. Dist. LEXIS 6687, at *12-13 (S.D.N.Y. May 14, 1997); *see also Nimmer*, § 13.02[A].  Alternatively, if a plaintiff can demonstrate a "striking similarity"

between the works at issue, then access may be inferred.[4]  *See Katzman v. Educ. Testing Servs.*, 793 F.2d 533, 541 (3d Cir. 1986); *see also Wizkids Creations Co. v. SEPTA Transp.*, Civ. A. No. 02-3249, 2003 U.S. LEXIS 3200, at *11 (E.D. Pa. Feb. 27, 2003) (*citing Katzman*, 793 F.2d at 541); *Hoffman*, 790 F. Supp. at 505; *Nimmer*, § 13.02[B].

### 2.       Substantial Similarity

There are two conjunctive considerations for determining "substantial similarity."[5]  *See Dam Things From Denmark*, 290 F.3d at 561 (*citing Whelan*, 797 F.2d at 1232 (following *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946) and subdividing test for substantial similarity into two considerations).  First, with the aid of expert testimony, the fact-finder must decide whether there is sufficient similarity between the works at issue "in order to conclude that the alleged infringer 'copied the work.'"  *Id.* at 562 (*citing Whelan*, 797 F.2d at 1232).  Second, if the first consideration is answered affirmatively, the fact-finder must then decide, without the aid of expert testimony, whether a "'lay-observer' would believe that the copying was of protectible aspects of the copyrighted work."  *Id.* (*citing Whelan*, 797 F.2d at 1232 (holding that first test must be answered in affirmative to proceed to second test)).  The second consideration has also been described as

---

[4] "Striking similarity" is a more stringent test than "substantial similarity."  Under the "strikingly similar" test, a plaintiff must show that the two works are so "strikingly similar . . . as to lead to no other conclusion then that they were copied."  *Katzman v. Educ. Testing Servs.*, 793 F.2d 533, 541 (3d Cir. 1986).

[5] While the Third Circuit suggests this two part test in determining substantial similarity, it has held that where "copyright cases involv[e] exceptionally difficult materials, like computer programs," the trial court should employ a single substantial similarity inquiry using both lay and expert testimony.  *Whelan*, 797 F.2d at 1233.  As this case involves music, an area that benefits from, rather that necessitates, expert testimony, the two part analysis applies instead of the single substantial similarity inquiry.

determining "whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (*citing Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991)).

As both tests require scrutiny of the elements of the works in question, the determination of substantial similarity is "exceedingly fact intensive." *Medical-Legal Consulting Inst. v. McHugh*, Civ. A. 95-7824, 1998 WL 310685, at *7, 1998 U.S. Dist. LEXIS 8623, at *10 (E.D. Pa. Dec. 8, 1999) (*citing Fyk v. Roth*, Civ. A. No. 95-3826, 1995 U.S. Dist. LEXIS 7168 (E.D. Pa. May 25, 1995); *see also Coston v. Prod. Movers*, Civ. A. No. 89-4865, 1990 WL 56516, at *5, 1990 U.S. Dist. LEXIS 5203, at *18 (E.D. Pa. May 2, 1990) (holding that extrinsic test requires trial judge to dissect and perform detailed analysis of the features of the two works in question) (*citing Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 146 (D.N.J. 1982)), *aff'd*, 775 F.2d 70 (3d Cir. 1985)). These two tests are also called, respectively, the "extrinsic" test and "intrinsic" test. Similarly, as the Third Circuit has noted, the Second Circuit "has termed these two considerations as 'actual copying' which focuses on access in conjunction with 'probative' similarity, and 'actionable copying' between the alleged infringing work and protectible elements of the original work." *Dam Things*, 290 F.3d at 562; *see also Daley v. Granada US Prods.*, Civ. A. No. 02-2629, 2003 U.S. Dist. LEXIS 3133, at *3 (holding extrinsic test "focuses on the objective similarities in specific expressive elements" (*citing Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

## B.   Defendants' Motion for Summary Judgment

Plaintiff's copyright action focuses on whether the melody of Defendants' song, "*What U See Is What U Get,*" was copied from the melody of Plaintiffs' song, "*What You See Is What You Get.*"

For the purposes of this motion, the Court will assume that Plaintiffs have valid ownership of their song.[6]  Therefore, the Court will concentrate its analysis on the "copying" element to determine whether there are issues that remain for trial.

        1.      **Access**

In order for Plaintiffs to prove that copying occurred, they must show that there was a reasonable possibility for Defendants to copy Plaintiffs' protected work in this case.  Plaintiffs allege that Defendants had access indirectly through Mr. Kahn to an instrumental version of the song in October 1999 and to the copyrighted version of the song in early December 1999.  Defendants assert that access is a chronological impossibility as the creators completed the melody of the Defendants' song before Ms. Spears recorded the vocals in early November 1999.  Thus, the determination of access must be predicated on the timing involved in the creation and completion of the allegedly infringing work.  *Cf. Sylvestre*, 1993 U.S. Dist. LEXIS 7002, at *7.

Plaintiffs assert that there is a genuine issue of material fact regarding the creation and completion of Defendants' work.  Such a finding, however, requires the Court to impermissibly weigh the credibility of the songwriters sworn testimony and improperly rely on mere speculation that the melody could have been changed after Ms. Spears completed the vocals in November 1999.  Four declarations by the creators of "*What U See Is What U Get*" state that the song, including the melody, was substantially written and completed by October 1999.  In November 1999, Ms. Spears recorded the vocals and they were not thereafter re-recorded.  The record also reflects that while changes were made to the song after November 1999, these changes were made during the mixing

---

[6] By agreement of the parties and pursuant to the Court's Order dated October 17, 2002, the issues of copying and ownership were bifurcated.

and production process.  Two of the creators, Mr. Magnusson and Mr. Yacoub, stated that none of

the changes that were made after recording the vocals were changes to the melody.  (Yacoub Dep.

at 45; Magnusson Dep. at 35.)  Thus, the record suggests that the melody of Defendants' song was

completed by the beginning of November 1999, before Defendants would have had access to a

copyrighted version of Plaintiffs' song.[7]

  In order to establish a genuine issue of fact on this point, Plaintiffs need to point to

affirmative evidence in the record that suggests that the melody of Defendants' song was in fact

altered after November 1999.  *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d

1358, 1363 (3d Cir. 1991) (holding "an opponent may not prevail merely by discrediting the

credibility of the movant's evidence; it must produce some affirmative evidence").  Plaintiffs

contend that Mr. Martin Sandberg's, p/k/a Max Martin, testimony and the declaration submitted by

Mr. George Hajioannou affirmatively show the existence of a dispute.[8]  This evidence, however,

merely shows that there is a possibility that a song's melody can be changed after vocals are

recorded.  (Sandberg Dep. at 19-20; Hajioannou Decl. ¶5.)  Mr. Sandberg and Mr. Hajioannou were

---

[7] Plaintiffs received the copyright certificate for their song in or around early December
1999.  (Wnukowski Dep. at 21.)  Plaintiff Wnukowski testified that they would not have
distributed the song until after getting copyright protection.  (Wnukowski Dep. 13, 16.)

[8] The declaration of George Hajioannou submitted with Plaintiffs' Supplemental
Memorandum in Further Support of Their Opposition to Defendants' Motion for Summary
Judgment is untimely.  His declaration purports to be "an opinion . . .based on [his] extensive
professional experience in the field of music computer software."  (Hajioannou Decl. ¶ 3.)  As
set forth in the Court's Order dated October 17, 2002, the deadline for designation of Plaintiffs'
experts was December 10, 2002.  Similarly, as stated in the Court's Order of February 26, 2003,
all discovery regarding access and similarity was to be completed by April 7, 2002.  Plaintiffs
filed their supplemental memorandum of law and the supporting declaration of Mr. Hajioannou
on May 13, 2003.  Thus, the declaration of Mr. Hajioannou is untimely.  Nevertheless, this
evidence does not create a genuine issue for trial as discussed above.

not involved with the creation of the allegedly infringing work, and, thus, their testimony only establishes that melody changes *can* be done after vocals are recorded, not that melody changes *were* made to the specific song at issue.  (Sandberg Dep. at 4-5; Hajioannou Decl. ¶3.)

Plaintiffs also assert that the absence of earlier versions of Defendants' song that could be compared to the final version establishes a dispute of material fact regarding whether the melody was in fact changed after November 1999.  This argument, however, is unpersuasive, because, again, Plaintiffs cannot cite affirmative evidence that the melody was changed or that the creators should be discredited.

Finally, Plaintiffs point to the date of the spilt percentage contract as evidence that the songwriters had not finished the song in November 1999.  This evidence is not sufficient for two reasons.  First, the creators testified that the signing of this contract does not necessarily reflect the exact completion date of the song.  (Magnusson Dep. at 20-21.)  Second, even assuming that March 2000, the date of the contract, reflected the date of completion of the song, it does not create a genuine issue as to the completion of the melody.  Again, Mr. Magnusson and Mr. Yacoub testified at their depositions that while there were changes in the mixing process of the song, these changes were not changes made to the melody.  Aside from discrediting the creators of Defendants' song, which I am not permitted to do, on this record, Plaintiffs cannot create a genuine issue regarding the completion date of the melody of Defendants' song.

Plaintiffs must therefore show that Defendants had access to their song before early November 1999 when the melody was completed and Ms. Spears recorded the vocals.  Even if the Court were to assume that the creators received an early version of Plaintiffs' song that they allegedly gave to Mr. Kahn, Plaintiff Cottrill admitted at his deposition that this version was not the

same as the song at issue in this action.   Moreover, this earlier version was not copyrighted.

Although Plaintiffs contend that the earlier version given to Mr. Kahn had the same melody as the

copyrighted version of the song (Pls. Mem. at 2), there is no evidence to support this contention.  *See*

*Celotex*, 477 U.S. at 324 (holding opposing party cannot rely on conclusory statements in order to

overcome summary judgment).  As Plaintiffs' have not come forward with any affirmative evidence

showing access, there is no reasonable possibility that the creators copied Plaintiffs' song before

November 1999 when the melody of Defendants' song was completed.

### 2.      Similarity

Even if Plaintiffs could show access, summary judgment is nevertheless warranted as

Plaintiffs cannot show that the two works are substantially similar.[9]  In order to show that there is

substantial or striking similarity, Plaintiffs must first meet the extrinsic test, which requires the trier

of fact to dissect the works with the aid of expert testimony in order to determine whether the

similarities are sufficient to prove copying.  *See Whelan*, 797 F.2d at 1232; *see also Walker v. Time*

*Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir. 1986) (*citing Arnstein*, 154 F.2d at 468).  Defendants assert

that Plaintiffs have failed to create a triable issue under the extrinsic test for two reasons.  First,

Defendants point out that Plaintiffs have not specifically identified any particular feature in

---

[9] Additionally, access cannot be inferred from striking similarity as Plaintiffs cannot even
meet the lower threshold of substantial similarity.  In order for Plaintiffs to survive summary
judgment without a showing of access, they must prove that the two works are "not just
substantially similar, but [are] so strikingly similar as to preclude the possibility of independent
creation."  *Cox v. Abrams*, 1997 WL 251532, at *5 (*citing Ferguson v. NBC*, 584 F.2d 111, 113;
*Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946)).  Although Plaintiffs must now satisfy the
more stringent test of "striking similarity" in order to infer access, the Court will analyze the
same factors used to meet the "substantial similarity" test.  *See Roginski v. Time Warner*
*Interactive, Inc.*, 967 F. Supp. 821, 827, n.10 (M.D. Pa. 1997).

Defendants' song that allegedly infringes upon their work.  Second, Defendants argue that Plaintiffs'

expert opinion by Dr. Marshall Bevil is based on the inherently subjective melodic reduction

analysis, and, thus, irrelevant under the extrinsic test.

      Although I do not reach the issue of whether the use of melodic reduction is a permissible

method of analysis, I do find that Plaintiffs' expert's opinion does not aid the fact-finder in

determining the extrinsic test; rather Dr. Bevil's opinion goes to the intrinsic test – how the two

works are aurally perceived by the lay listener.  Dr. Bevil opines that after conducting a musical

analysis based on melodic reduction, "the two works . . . are strikingly similar, resulting in their

sounding almost identical to the average lay listener."  (Bevil Decl., Ex. 1 at 1.)  Much of Dr. Bevil's

analysis speaks to the issue of whether the two works sound similar to the average lay listener and,

by his own admission, is not textually based.  Specifically, Dr. Bevil opines that "the Cottrill and

Zomba songs . . . are strikingly similar, although not identical, from a musical (as distinct from a

textual) standpoint, resulting in their sounding very much the same to the average lay listener who

perceives them aurally rather than reading them from notation."  (Bevil Decl., Ex. 2.)  This analysis,

regardless of its reliability, does not aid the trier of fact in the detailed examination of the elements

of the two works required under the extrinsic test in order to determine whether there has been actual

copying.[10]  *Cf.  ZZ Top v. Chrysler Corp.*, 54 F. Supp. 2d 983, 986 (W.D. Wash. 1999) (holding that

"[w]hile the reduced version of the riff may . . . be an appropriate representation of 'how the music

actually sounds' or is 'perceived,' it is not an accurate representation of the written notes that are

---

      [10]  Dr. Bevil's opinion also cannot be used under the intrinsic test as the Third Circuit has
counseled that the trier of fact should not consider expert testimony when deciding whether a lay
observer would perceive that the copying was of protectible elements of the plaintiff's work.  *See
Whelan Assoc. v. Jaslow Dental Laboratory, Inc.*, 797 F.3d 1222, 1232 (3d Cir. 1986).

subject to copyright protection. . . ").

Plaintiffs have also submitted a CD with versions of the songs at issue played simultaneously as evidence that the works are substantially similar under the extrinsic test.  To illustrate that any similarities between the works at issue can be detected in other modern, pop songs performed in the same meter, Defendants also submitted a CD with three different pop songs overlaid on the allegedly infringing work in question.  After listening to both Plaintiffs' and Defendants' CDs, it is clear to the Court that the comparison offered by Plaintiffs' CD is unhelpful under the extrinsic test and only further demonstrates the necessity to dissect the works in question in order to discern the protectible similarities from the similarities common to songs of this particular genre.  *See Gaste*, 863 F.2d at 1068 (holding court should be "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music" (*citing Arnstein v. Edward B. Marks Music Corp.*, 82 F.2d 275, 277 (2d Cir. 1936))); *see also Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) ("The striking similarity test . . . is applied with particular stringency in cases . . . involving popular music."); *Nimmer* §13.03[A][2] (noting that "in musical composition, . . . similarity must be found in more than a brief and commonplace musical sequence, or merely in motif").

Thus, Plaintiffs have not demonstrated which particular features of the two works are similar.  Nevertheless, a comparison of the verses of the two songs yield at most the following similarities: two identical pitches at the opening of each song's chorus; both verses end and begin with an A minor chord; both songs repeat a particular note three times in their verses (although the repeated note is different in each song); and both are set in 4/4 time.  (Ricigliano Dep. at 62-68; Ricigliano Decl. at 3-9; Defs. Supplemental Memo. in Supp. of Defs. Mot. for Summ. J. at 23.)  As

18

Defendants' expert, Anthony Ricigliano, states "[a]ny similarity between [the two songs in this respect] is due to the use of basic musical elements or musical material that are characteristic to this style or type of music" (Ricigliano Decl., Ex. A at 9). *See Feist*, 499 U.S. at 345 ("The *sine qua non* of copyright is originality"); *see also Jean v. Bug Music, Inc.*, Civ. A. No. 00-4022, 2002 WL 287786, at \*5, 2002 U.S. Dist. LEXIS 3176, at \*13 (S.D.N.Y 2002) (holding "elements of the work must be original and nontrivial to constitute improper appropriation). While some courts hold that a combination of unprotectible elements may qualify for copyright protection, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994), those elements must be "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). The same cannot be said of the elements here, especially in light of the fact that they are common to music of this type. *See Gaste*, 863 F.2d at 1068.

Most obviously, a comparison of the chorus sections yields the similarity in the titles and use of the lyric phrase, "what you see is what you get." While the titles of the songs and use of the lyric phrase are the same, this similarity is not probative of copying as the phrase is a cliché and can be found in prior art. (Ricigliano Decl., Ex. A at 9-10.) Additionally, the pitch series and opening rhythm of this lyric phrase are different in each of the songs. (*Id.*)

After an analysis of the elements of the songs, viewing the facts in a light most favorable to Plaintiffs, the similarities between the two songs would not lead a reasonable juror to conclude that the creators of Defendants' song copied Plaintiffs' work.[11] As Plaintiffs cannot demonstrate a triable

---

[11] As Plaintiffs cannot meet the extrinsic test, further analysis under the intrinsic test is unnecessary.

issue of access or similarity, I grant Defendants' motion for summary judgment.  An appropriate

Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL COTTRILL and** | : | |
| **LAWRENCE E. WNUKOWSKI,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BRITNEY SPEARS, et. al,** | : | **No. 02-3646** |
| **Defendants.** | : | |

## <u>ORDER</u>

**AND NOW**, this         day of **May, 2003**, upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' response thereto, Defendants' Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, Plaintiffs' Supplemental Memorandum of Law, and following oral argument, and for the foregoing reasons, it is hereby **ORDERED** that:

1.  Defendants' Motion for Summary Judgment (Document No. 15) is **GRANTED**. Summary judgment is entered in favor Defendants Britney Spears, Zomba Recording Corporation, Zomba Enterprises, Inc, Zomba Songs, Inc., Jive Records, Wright Entertainment Group, and BMG Music Publishing, Inc. and against Plaintiffs Michael Cottrill and Lawrence E. Wnukowski.

2.  The Clerk of Court is directed to close this case for statistical purposes.

**BY THE COURT:**


_____

**Berle M. Schiller, J.**