IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL COTTRILL** and **LAWRENCE E. WNUKOWSKI**, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No.: 02-CV-3646 |
| v. | : : | |
| **BRITNEY SPEARS**, *et al*, | : : | |
| Defendants. | : : : | **JURY TRIAL DEMANDED** |

## ORDER

**AND NOW**, this _____day of _____, 2003, upon consideration of Defendants' motion pursuant to 17 U.S.C. §505, for an award of costs and attorneys' fees, Plaintiffs' Opposition thereto, and the record as a whole, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is hereby **DENIED**.

BY THE COURT:

_____
Berle M. Schiller, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL COTTRILL** and **LAWRENCE E. WNUKOWSKI**, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No.: 02-CV-3646 |
| v. | : : | |
| **BRITNEY SPEARS**, *et al*, | : : | |
| Defendants. | : : | **JURY TRIAL DEMANDED** |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS FEES AND COSTS PURSUANT TO 17 U.S.C. §505

Plaintiffs, Michael Cottrill ("Mr. Cottrill") and Lawrence E. Wnukowski ("Mr. Wnukowski") by and through his undersigned counsel, Bochetto & Lentz, P.C., hereby submit their Opposition to Defendants' Motion for Attorneys' Fees and Costs pursuant to 17 U.S.C. §505, and in support of their Opposition, incorporates by reference their accompanying memorandum of law, declarations and exhibits, as though fully set forth herein.

Respectfully submitted,

By: _____
Gavin P. Lentz, Esquire
David P. Heim, Esquire
Vincent van Laar, Esquire
**BOCHETTO & LENTZ, P.C.**
Attorneys for Plaintiff
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL COTTRILL** and **LAWRENCE E. WNUKOWSKI**, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No.: 02-CV-3646 |
| v. | : : | |
| **BRITNEY SPEARS**, *et al*, | : : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |
| _____ | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR OPPOSITION TO DEFENDANTS' MOTION
FOR ATTORNEYS FEES AND COSTS PURSUANT TO 17 U.S.C. §505**

### I. INTRODUCTION

Defendants have filed a Motion for Attorney's Fees and Costs, arguing, smugly at times, that Plaintiffs' claims were asserted for "improper motives" and never had an "objectively reasonable" basis under the law and facts. This position is in stark contrast to Defense counsel's comments during oral argument, where he commended Plaintiffs' counsel for their candor, acknowledged he "understood" the factual basis for Plaintiffs' claims, and commended Plaintiffs for being "very faithful to the law" in their brief opposing summary judgment.

As Defense counsel acknowledged, Plaintiffs had more than an objectively reasonable basis to initiate their claims. Plaintiffs filed their claim for the proper purpose of protecting their copyrighted song from infringement. There was (and is) a reasonable basis for Plaintiffs' allegation that Defendants infringed Plaintiffs' copyrighted song. The purposes of the Copyright Act are not served by awarding costs and fees against a party that asserts reasonably objective claims of infringement. This case represents a classic example of a close, albeit unsuccessful,

copyright infringement claim. Because the law is clear that an award of costs and fees is not appropriate in such cases, Defendants' Motion for an Award of Costs and Attorneys' Fees should be denied.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

### 1.   Reasonably Objective Beliefs Prior To Litigation

This litigation was only instituted after Plaintiffs and their attorneys conducted a thorough, reasonable, objective investigation into the merits of Plaintiffs' claims. Indeed, although Plaintiffs became aware of what they reasonably believed constituted an unlawful copying of their copyrighted song in or around May of 2000 (the date of the Release of Defendants' album), they did not initiate their lawsuit until June 7, 2002.

During that period of time, Plaintiffs took all reasonable actions to determine the legitimacy of their claim. These actions, taken prior to the institution of this lawsuit, include, and are not limited to: (1) immediately notifying Defendants through their agent Wade Leak that Defendants' song "*What U See (Is What U Get)*" infringed Plaintiffs' copyrighted song; (2) determining the date Defendants' song was copyrighted--May, 2000--and verifying that it was copyrighted *after* Plaintiffs' copyrighted their song in December, 2000; (3) verifying their belief that Louis Pearlman sent out their copyrighted song to numerous "recording companies" in February, 2000; (4) through counsel, communicating with the Defendants that there was copyright infringement in or around September, 2001 (*See* Forbes Letter, 9/10/01, attached to Lentz Declaration at Exhibit 8.); (5) conducting a side-by-side musicological analysis[1] of the

---

[1]   Defendants, in their Memorandum at page 1, mistakenly assert that "Plaintiffs' Complaint clearly and intentionally suggests that plaintiffs had engaged and received a favorable opinion from a musicologist prior to commencing this action. This, however, apparently was not the case." Plaintiffs' Complaint, however, clearly states that a pre-suit "musicological analysis" was conducted, which is absolutely true. In fact, before this suit was filed, on two separate

songs in or around November, 2001 (*see* Dep. Cottrill, p. 138, attached to Lentz Declaration as Exhibit 9); (6) conducting another musicological analysis on June 6, 2002; and (7) researching the Swedish artists' website and discovering that they are "mix" artists. (*See* Declarations of Cottrill, Wnukowski, Lentz, and Bochetto.)

Accordingly, at the time this litigation was initiated (as well as today), Plaintiffs were objectively reasonable in their belief that Defendants infringed their validly copyrighted song. An award of attorney's fees is not justified in this instance.

### 2. **Reasonableness of Litigation**

From the beginning, this litigation has proceeded civilly and cost efficiently. Throughout the litigation, there was a continued effort amongst all counsel to cooperate in the discovery process. This was done to allow the parties to discover the necessary facts that supported their respective positions, while simultaneously keeping the cost of the litigation to a minimum.

For example, at the very beginning of this litigation, the parties were required to meet and confer as to a proposed discovery schedule pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. In that regard, defense counsel suggested a discovery plan that bifurcated the issues of liability (*i.e.,* access and substantial similarity) from the issues of copyright ownership and damages. As defense counsel urged, "it seems logical that those issues [access and similarity] should be addressed and decided at the outset of the case, ***before*** the parties expend any energy or money addressing the issues of ownership and damages." (*See* Merivs Letter, 9/27/02, attached as Exhibit 2 to Lentz Declaration.) Defense counsel concluded his letter with the "hope that [Plaintiffs] will give the foregoing proposal due consideration, bearing in mind the potentially

---

occasions, Plaintiffs conducted a side-by-side musicological analysis utilizing computer generated graphs, both of which showed the songs were substantially similar.

enormous cost of full-blown discovery on damages issues." (*See Id.*)  In an effort to reduce the expense of the litigation, Plaintiffs agreed with Defendants' proposed bifurcated discovery schedule, thereby alleviating the "enormous cost" of discovery on damages and ownership issues. (*See* Bochetto Letter 9/30/02, attached as Exhibit 3 to Lentz Declaration.)

In addition, Plaintiffs took all reasonable measures in scheduling depositions to accommodate witnesses' schedules and to avoid the disruption of their business.  The artists who allegedly composed the infringing song were located in Sweden, and the vocalist of the infringing song, Britney Spears, is a famous artist with a hectic traveling schedule.  In that regard, Plaintiffs filed a motion to take the deposition of Ms. Spears only to avoid the disruption of her traveling schedule and to accommodate her.[2]  Likewise, Plaintiffs scheduled the depositions of the Swedish artists through a video conference service, the entire costs for which were paid by Plaintiffs.  This was done to avoid having counsel travel overseas, thereby avoiding the additional expense and fees associated with such travel.  (*See* Lentz Declaration at ¶ 10 n. 3.)

The reasonableness with which Plaintiffs conducted this litigation is also evidenced by the fact that Plaintiffs granted Defendants several extensions, including an extension to file their Answer to plaintiffs' Complaint and to answer discovery.  (*See* Mervis Letter, 11/5/02 attached as Exhibit 4 to Lentz Declaration; Bochetto Letter, 10/24/03, attached as Exhibit 7 to Lentz Declaration; Mervis Letter, 8/12/02 attached as Exhibit 5 to Lentz Declaration.)   Furthermore, Plaintiffs fully cooperated with defense counsel in connection with the proposed confidentiality agreement and protective order.  (*See* Carissimi Letter, 12/16/02 attached as Exhibit 6 to Lentz Declaration.)

---

[2]     Although this Court, without the filing of any opposition papers, denied Plaintiffs' motion to take Ms. Spears' deposition as premature, neither Defendants' counsel nor Ms. Spears incurred any inconvenience or undue burden as a result of Plaintiffs' motion.

In sum, Plaintiffs (and their counsel) took every effort to make this litigation as least expensive and costly as possible. When presented with a cost saving proposal, or a request for an extension, Plaintiffs repeatedly obliged Defendants' requests. From beginning to end, this litigation was conducted in a reasonable fashion, with an eye toward reducing all parties' expenses.

### 3. Defense Counsel Recognizes The Merits Of Plaintiffs' Claim

Ironically, the same Defense Counsel that now accuses Plaintiffs' of having an "improper motive" and asserting "objectively unreasonable" claims, acknowledged the reasonableness of Plaintiffs' claim during oral argument on Defendants' Motion for Summary Judgment. Mr. Mervis summarized his view of why Plaintiffs filed their claim as follows:

> Why are we here? We're here because these two plaintiffs wrote a song, and we're not denying that they wrote a song, that has a title, *"What You See Is What You Get,"* and they gave a copy of that song to a person who we admit had a contract with one of the defendants, a person who we admit had a contract with one of the defendants, a person named Billy Kahn. And subsequent to that Ms. Spears' record came out and it had a song of the same title, *"What You See Is What You Get,"* that's why this lawsuit was started and I would submit, and I think hopefully by the end of my argument, that's the only reason we're here. Coincidences happen.

(Hearing Transcript at pp. 3-4, attached to Lentz Declaration as Exhibit 1.) Although he characterized Plaintiffs' claim as "coincidental," Mr. Mervis also stated that he could "understand the lawsuit to an extent because the titles are the same." (*See Id.* at p. 27.)

Mr. Mervis also acknowledged Plaintiffs' took reasonable legal positions in opposing summary judgment. He commended Plaintiffs' counsel for their "candor" in opposing Defendants' Motion for Summary Judgment. (*See Id.* at p. 60.) He also commended Plaintiffs on their brief opposing summary judgment for being "very faithful to the law." (*See Id.* at p. 15.)

Now that attorney's fees and costs are at stake, it is not surprising that Defendants (and

their counsel) have changed their characterizations of Plaintiffs' claims.  However, Defendants' efforts to re-characterize Plaintiffs' claims should not be given any weight, especially after they already acknowledged Plaintiffs' factual and legal arguments were "understandable" and "very faithful to the law."

## I. ARGUMENT

### A.   Attorney's Fees Are Not Awarded As A Matter Of Course Under The Copyright Act; Equitable Factors Govern The Determination.

Under § 505 of the Copyright Act, the court has the discretion to award attorneys fees and costs to a prevailing party.  *See* 17 U.S.C. § 505.  The law is well-settled that "attorney's fees [should not be] be awarded under Section 505 in every case."  *Budget Cinema , Inc. v. Watertower Assoc.*, 81 F.3d 729 (7th Cir. 1996); *see also Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503 (4th Cir. 1994)(stating that "[w]e do not hold that attorney's fees and costs must be awarded as a matter of course.")

While there is no precise formula that governs this determination, the court is guided by a non-exclusive list of factors set forth in the seminal case *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  The court in *Garnier v. Andin International, Inc.*, 884 F.Supp. 58 (D. R. I. 1995) aptly summarized the *Fogerty* standard as follows:

> *Fogerty* is the guiding beacon lower courts look to for guidance in determining entitlement to attorney fees in copyright infringement suits. Although it does not reveal a clear cut and detailed view of the course to be followed, *Fogerty* does offer certain definite criteria to be considered. What is certain is that a fee is not automatically awarded to a prevailing party, that '[p]revailing plaintiffs and prevailing defendants are to be treated alike,' and that attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. Other than the foregoing, there are no certainties. 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'

*Id.* at 62 (*quoting Fogerty*, 510 U.S. at 517, 532.)

The nonexclusive factors that courts should apply in determining whether an award of attorney's fees and costs is appropriate include "frivolousness[3], motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 535 n. 19 (*quoting Lieb v. Topstone Indus., Inc*., 788 F.2d 151, 156 (3d Cir.1986)).  Other factors that a court may consider include a party's good faith.  *See Sherry Mfg. Co. v. Towel King of Fla., Inc*., 822 F.2d 1031, 1034 (11th Cir. 1987) (fact that losing party has acted in good faith justified an exercise of district court's discretion in deciding not to award attorneys' fees.)

Regardless of the specific factors utilized, it is abundantly clear that general principles of equity control the analysis.  In view of the non-exclusive factors identified in *Fogerty*, and the Court's general notion of equity and fairness, Defendants' motion for attorneys fees and costs should be denied.

### B.  An Award Of Attorney's Fees And Costs In This Case Would Be Inconsistent With The Goals Of The Copyright Act.

#### 1.  Plaintiffs' claim was (and is) objectively reasonable.

Plaintiffs' claim was objectively reasonable at the time they initially filed their claim, and it remained reasonable throughout the discovery and summary judgment phases of this litigation.  In fact, during oral argument, Defense Counsel virtually admitted that Plaintiffs' claim was reasonable.  (*See* Hearing Transcript 5/6/03 at pp. 3-4, 27, attached to Lentz Declaration as Exhibit 1.")  Not surprisingly, with the prospect of costs and attorneys' fees looming, Defendants now attempt to re-characterize Plaintiffs' claims as having no factual or legal support whatsoever.

---

[3]    Frivolous is defined as "of little weight or importance" or that it had "no basis in law or fact."  *See Garnier*, 884 F.Supp. 2d at 61 (citing Webster's Third New International Dictionary 912 (1967).  Here, like in *Garnier*, Plaintiffs' claim was certainly not frivolous.

As Defense Counsel previously acknowledged, there is no basis for this conclusion.

The law is well-settled that "any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Fogerty*, 510 U.S. at 534 n. 19. The "principle purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them." *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir.1984). As such, the imposition of a fee award against a copyright holder with an objectively reasonable litigation position does not promote the purposes of the Copyright Act. *See, e.g., Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir.1999); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir.1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable"); *Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir.1998) (vacating award of fees because, *inter alia*, losing party's claims were objectively reasonable); *EMI Catalogue P'ship v. CBS/Fox Co.*, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award).

The time to consider the reasonableness of a claim is **at the time the litigation is initiated**. *See Brewer-Giorgio v. Bergman*, 985 F.Supp. 1478 (N.D. Ga. 1997)(*quoting Garnier v. Andin Intern, Inc.*, 884 F.Supp. 58, 62 (D.R. I. 1995)). "A party who propounds a reasonable claim should not be penalized, whether or not the judge buys the claim or whether the judge's decision is upheld or reversed on appeal." *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728 (7th Cir. 1998). The rationale for this principle was explained by the court in *Mitek*:

> The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, *i.e.*, by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to

valuable works.

198 F.3d at 842-43 (*quoting Fogerty*, 510 U.S. at 526-27); *see also Lotus*, 140 F.3d at 75 ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.")

There is no doubt that Plaintiffs had an objectively reasonable basis for bringing this lawsuit. Before initiating their lawsuit, Plaintiffs conducted two musicological comparisons to substantiate their allegations of copyright infringement. (*See* Dep. Wnukowski, p. 68, attached to Lentz Declaration as Exhibit 10.) They also fully investigated the timing of the respective parties' copyright registrations, and learned their song was copyrighted at least four months before Defendants' song was copyrighted. (*See* Wnukowski Declaration at ¶ 4.) Moreover, the allegedly infringing song and Plaintiffs' song had the exact same title. Even more compelling, Plaintiffs gave William Kahn a copy of their song specifically for the possibility of Britney Spears recording it. Mr. Kahn is an individual with direct access to Ms. Spears' production team, and he and Plaintiffs had a prior relationship that also involved the submission of songs for Ms. Spears. (*See* Dep. Mr. Cottrill, p. 29, Lentz Declaration, Exhibit 9, stating that it is his belief that defendants received a copy of a recording of "*What You See Is What You Get*" through Mr. Kahn.)

Besides the objective factors establishing the reasonableness of Plaintiffs' claims, even Defendants have acknowledged Plaintiffs' claims as reasonable. In a letter to Plaintiffs' counsel, dated September 27, 2002, Defense Counsel stated Defendants "obviously recognize that you

believe your clients' claim has merit." (*See* Mervis Letter, dated September 27, 2002 attached to Lentz Declaration as Exhibit 2.)  Likewise, during oral argument, Defense Counsel actually summarized the reasonable factual basis for Plaintiffs' claims, and stated he "understood" why Plaintiffs' filed this lawsuit.  (*See* Hearing Transcript 5/6/03 at pp. 3-4, 27 attached to Lentz Declaration as Exhibit 1.)

Defense counsel also acknowledged there was a reasonable legal basis supporting Plaintiffs' claim of infringement.  During oral argument, Defense counsel "commended" Plaintiffs "because [he thought] they were very faithful to the law in their brief." (*See Id.* at p.15.)  Defense counsel also "commended" Plaintiffs' counsel for their "candor" (*see Id.* at p. 60), and he separately acknowledged Plaintiffs had presented a "terrific set of papers" in opposition to Defendants' Motion for summary judgment.  (*See Id.* at p. 9.)

Not surprisingly, now that the lucrative prospect of attorney's fees and costs are in sight, Defendants attempt to recast Plaintiffs' claims as having no legitimate basis whatsoever.  The Court should disregard such double talk.  Defendants seem to argue that it was crystal clear from the beginning of this litigation that their song was "independently created" before Plaintiffs submitted copies of their song to Mr. Kahn.  However, Defendants never produced any tapes or documents conclusively demonstrating their infringing song was "independently created" or "completed" before Plaintiffs distributed their song.[4]  Also, because Defendants were not in the possession, custody or control of many of the documents requested by Plaintiffs, discovery was necessary to fully explore the allegations of access, substantial similarity and independent creation.  (*See* Mervis Letter 11/5/02, attached to Lentz Declaration as Exhibit 4); *see also Garnier*, 884

---

[4] In fact, Defendants' copyright registration reflects a "completion date" in May, 2000.

F.Supp. 2d at 62. )(stating that discovery was necessary to explore Plaintiffs' claims.)

In sum, the filing and maintenance of this lawsuit was objectively reasonable. Defendants have virtually conceded this point. There were clear undisputed facts and ample legal authority supporting Plaintiffs' claims. Given the reasonableness of Plaintiffs' claims, the purposes of the Copyright Act will not be served by awarding Defendants costs and attorney's fees. Defendants' Motion should be denied.

> **2.      Plaintiffs filed this litigation with a proper motivation, *i.e.* to protect their registered copyright.**

Faced with an unsupported theory of unreasonableness, Defendants also assert that Plaintiffs initiated this litigation with an improper motive. However, no such evidence, other than Defendants' unfounded speculation, exists.

"Proof of improper motivation requires substantially more than pulling facts out of context to support assertions of questionable intentions." *FASA Corporation v. Playmates Toys, Inc.*, 1 F.Supp. 2d 859, 865 (N.D. Ill. 1998); *see also Brewer-Giorgio v. Bergman*, 985 F.Supp. 1478, 1483 (N.D. Ga. 1997) (stating that "at the time the action was brought, . . . Plaintiffs were motivated by nothing more than a desire to protect their rights from what they perceived as Defendants' wrongful copying of their copyrighted works."); *see Garnier v. Andin International, Inc.*, 884 F.Supp. 58, 63 (D. R. I. 1995)(stating that "[the court] is persuaded that the plaintiff's action was motivated by a desire to stop defendants from what it believed was a wrongful copying of a work it had created.")

Here, Plaintiffs clear intentions were to vindicate their legally protectible rights. (*See* Dep. Wnukowski, p. 12, Lentz Declaration, Exhibit 10, stating that the reason to register their songs with the Copyright Office is to protect the song; *see also* Cottrill and Wnukowski Declarations.)

The evidence cited by Defendants as supporting Plaintiffs' so-called "improper motive" is nothing more than pure speculation. That the case received publicity in the local media, and that Plaintiffs had pre-suit settlement conversations do not demonstrate an improper motive. Likewise, Plaintiffs' attempt to take Ms. Spears deposition while she was in Philadelphia during her summer tour does not demonstrate improper motive. Plaintiffs did not file a motion to take the deposition of Ms. Spears as a tactic of harassment. Rather, Plaintiffs only did so to avoid the disruption of Ms. Spears traveling schedule and to accommodate her.[5]

Defendants' attempt to characterize Plaintiffs' intentions as improper is unavailing. Plaintiffs filed and maintained their claims because they reasonably believed Defendants' infringed their valid copyright. To hold otherwise, the Court would have to adopt Defendants' wholly speculative and unfounded assertions. The law prohibits an award of costs and fees on such speculative grounds.

### 3. An award of fees and costs will not advance considerations of compensation or deterrence.

Attorneys fees should only be awarded in particular circumstances to advance considerations of compensation and deterrence. This is not a case that lends itself to an award solely on this basis.

Defendants rely upon two cases in support of their argument that the policies of deterrence and compensation require an award of costs and fees in this case. However, both of the cases cited by Defendants are materially distinguishable from this litigation.

The first case Defendants cite, *Cohen v. Va. Elec. & Power Co.*, 617 F.Supp. 619, 623

---

[5] Defendants' assertion that Ms. Spears had no knowledge about the creation or production of the alleged infringing song at issue is absurd. In fact, Defendants themselves, in support of their motion for summary judgment, attached an Affidavit of Ms. Spears, stating that she participated in the recordings of the songs at issue.

(E.D. Va. 1985), does not even address the policies of "deterrence and compensation." *Cohen* is an eighteen-year old district court decision that predates the Supreme Court's seminal opinion in *Fogerty*. In *Cohen*, the court's decision to award fees rested on its finding that Plaintiff failed to zealously conduct discovery to prove his case. *Id.* at 623. The same cannot be said of Plaintiffs. *Cohen* has absolutely no application to this matter.

Likewise, the second case Defendants cite, *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F.Supp. 2d 663 (S.D. N.Y. 2001), is not applicable either. There, unlike here, the court made a specific finding that the plaintiff's litigation position was "objectively unreasonable" because the plaintiff did not have "a valid copyright in an original work," and because plaintiff's arguments as to originality were "squarely rejected by the Supreme Court." *Id.* at 666-67. Here, there has never been a challenge to the validity of Plaintiffs' copyright. Moreover, as stated above, Plaintiffs' claim of infringement was objectively reasonable, both on a legal and factual basis.

Although Defendants ignore the relatively meager financial resources of Plaintiffs, the Third Circuit has determined that such a factor is relevant in determining whether the policies of deterrence and compensation will be served by awarding fees. The Third Circuit in *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151 (3d Cir.1986) explained the importance of the parties' financial resources to a fee award analysis:

> The sum requested is large, and we note that it may be both disproportionate to the amount at stake and excessive in light of the plaintiff's resources. We emphasize that the aims of the statute are compensation and deterrence where appropriate, but *not ruination*.

*Id.* at 156 (emphasis added.)

Awarding attorney's fees and costs against the Plaintiffs here would essentially ruin their financial well-being. As stated in their respective Declarations, both Plaintiffs have a minimal

stream of income.  (*See* Declarations of Cottrill at ¶¶ 12-13 and Wnukowski at ¶¶ 10-11.)  Any award of attorney's fees, even the reduced amount requested by Defendants, would not only ruin Plaintiffs' financial well-being, but it also would have a devastating impact on Plaintiffs' respective families.  (*See Id.*)

As the Third Circuit acknowledged, "the aims of the statute are compensation and deterrence where appropriate, but not ruination."  *Lieb*, 788 F.2d at 156.  An award of attorney's fees here would not be appropriate because Plaintiffs' claims were filed and maintained with a reasonable factual and legal basis.  Moreover, any award of attorneys' fees would financially ruin Plaintiffs.  There is no basis to award Defendants' costs and attorney's fees.  Defendants' Motion should be denied.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully requests this Honorable Court to deny Defendants' Motion for an Award of Costs and Attorneys' Fees, pursuant to 17 U.S.C. §505.


Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated: _____          By:    _____
                                Gavin P. Lentz, Esquire
                                David P. Heim, Esquire
                                Vincent van Laar, Esquire

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Kimberly R. Enoch hereby certify that on June 19, 2003, I caused a true and correct copy of the foregoing **Plaintiffs' Opposition to Defendants' Motion for Attorneys Fees and Costs Pursuant to 17 U.S.C. §505** to be served, via Airborne Express Overnight Mail, upon the following:

>Vincent V. Carissimi, Esquire
>Pepper Hamilton LLP
>3000 Two Logan Square
>Eighteenth and Arch Streets
>Philadelphia, PA 19103-2799
>
>Michael T. Mervis, Esquire
>PROSKAUER ROSE LLP
>1585 Broadway
>New York, NY 10036-8299

**BOCHETTO & LENTZ, P.C.**

By:_____
    Kimberly R. Enoch, Paralegal